UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARDON MILTON PALMER (A# 214-963-954),<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,<br>Respondent. | No. 1:26-cv-06738 DC SCR<br><br>ORDER and<br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner is a citizen and native of Jamaica who was admitted into the United States under a B2 nonimmigrant visa on July 11, 2013, as a minor, but overstayed his authorization. ECF No. 1 at 2-3, ¶¶ 4; ECF No. 5-1 at 3. Petitioner has resided in the United States since that last entry. He went on to graduate high school in Tampa, Florida, with a 4.0 GPA, has held several jobs as a construction technician, and financially supports his elderly mother and young nephew. Id. at 3, ¶¶ 5-11. The Department of Homeland Security ("DHS") denied Petitioner's Form I-130 (petition for alien relative) and I-485 (application to register permanent residence or adjust status)

applications on July 12, 2023. ECF No. 5-1 at 3 (Form I-213). DHS issued Petitioner an employment authorization card on July 14, 2023, that is valid until July 2, 2029. Id. at 3, ¶ 6; ECF No. 5-1 at 3 (Form I-213).

On July 5, 2026, local law enforcement arrested Petitioner for domestic battery and false imprisonment. ECF No. 5-2 at 4-5 (FBI "rap sheet"). Prosecutors dropped the charges on July 24, 2026. Id. at 5; ECF No. 1 at 3, ¶ 13. On or around July 27, 2026, local law enforcement transferred Petitioner to the custody of Immigration and Customs Enforcement ("ICE"). ECF No. 1 at 3, ¶ 14. Immigration officials charged Petitioner as removable under 8 U.S.C. § 1227(a)(1)(B) (visa overstay). ECF No. 5-1 at 2-3. Petitioner is detained in the California City Immigration Processing Center within this judicial district. ECF No. 1 at 2, ¶ 1.

The petition alleges that because Petitioner developed a liberty interest during 13 years of freedom in the United States, his re-detention without pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment. ECF No. 1 at 4-6. It further claims that ICE arrested Petitioner without a warrant in violation of due process and 8 U.S.C. § 1226(a). Id. at 6-7. Petitioner seeks immediate release. Respondent agrees that Petitioner is subject to 8 U.S.C. § 1226(a) but opposes the petition on grounds that Petitioner refused to sign the Form I-286 provided to him and has not requested a bond hearing. ECF No. 5. Respondent submitted Petitioner's form I-200 warrant for arrest dated July 6, 2026 (with a date of service of July 24, 2026), to refute Petitioner's statutory claim for warrantless arrest. ECF No. 5-3.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989);

Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**B. Statutory Detention Authority**

The Supreme Court described the detention statute at issue in this case, 8 U.S.C. § 1226, in Jennings v. Rodriguez, 583 U.S. 281 (2018):

> Section 1226 generally governs the process of arresting and detaining that group of [non-citizens] pending their removal . . . Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of [a non-citizen] 'pending a decision on whether the [non-citizen] is to be removed from the United States.' § 1226(a). 'Except as provided in subsection (c) of this section,' the Attorney General 'may release' [a non-citizen] detained under § 1226(a) 'on ...bond' or 'conditional parole.'

Jennings, 583 U.S. at 288.[1]

"When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. The [noncitizen] will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen]

---

[1] The undersigned changed "alien" to "non-citizen" in these passages. This has become commonplace among jurists at the Supreme Court and Ninth Circuit in recent years. See Patel v. Garland, 596 U.S. 328 (2022) (Barrett, J.); United States v. Palomar-Santiago, 593 U.S. 321 (2021) (Sotomayor, J.); Barton v. Barr, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.' " (citing 8 U.S.C. § 1101(a)(3))); Avilez v. Garland, 69 F.4th 525 (9th Cir. 2023); Arce v. United States, 899 F.3d 796 (9th Cir. 2018).

is likely to appear for any future proceeding.'" Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). If a noncitizen wishes to contest the Attorney General's initial custody determination—i.e., the denial or amount of bond—the noncitizen has a right to do so before an IJ "any time before an order [of removal] becomes final." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). After a custody redetermination hearing, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Rodriguez Diaz, 53 F.4th at 1197 (citing 8 C.F.R. § 1003.19(e)).

**III. Analysis**

Although the parties agree that Petitioner is detained pursuant to § 1226(a), that does not resolve his due process challenges to the lack of a pre-deprivation hearing prior to his arrest. "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." Rico-Tapia v. Smith, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025). "The Due Process Clause generally 'requires some kind of a hearing before the State deprives a person of liberty or property.'" Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (citing Zinermon v. Burch, 494 U.S. 113, 127 (1990)); see also Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. Jul. 17, 2025) ("[A]bsent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process.") (emphasis in original).

The undersigned finds that Petitioner had a protected liberty interest in remaining free from custody based on his significant community ties developed over 13 years in the United States and the government's decision not to detain him after the expiration of his visa.

> "[W]here, as here, a noncitizen builds a life in the United States after being granted entry pursuant to a visa—such that the government was not only aware of but *approved of* the noncitizen's initial presence in the country—that noncitizen develops a vested liberty interest in remaining free from detention when the government does not act to detain the noncitizen pursuant to 8 U.S.C. § 1227(a) and § 1226(a) within a reasonable time following the expiration of their nonimmigrant status."

Oliveira Tinoco v. Albarran, et al., No. 1:26-CV-05505-DC-CKD (HC), 2026 WL 2949219, at *5 (E.D. Cal. Oct. 1, 2026) (emphasis in original). Moreover, Petitioner alleges, and the record supports, that he received a DHS-approved work authorization card and social security card

several years before his detention. ECF No. 1 at 3, ¶ 6; ECF No. 5-1 at 3. "By concluding that there was no need to detain Petitioner after his B-2 visitor visa had expired, and instead sanctioning his continued presence in the United States by granting and renewing his employment authorization, the government vested in Petitioner a liberty interest in his continued freedom." Gagik T. v. Chestnut, et al., No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026). DHS's rejection of Petitioner's applications for immigration relief in July 2023 further evince its knowledge and tacit approval of his presence in the country. See Oliveira Tinoco, 2026 WL 2949219, at * 4 ("Petitioner's multiple immigration applications . . . make clear that DHS had recurrent notice that Petitioner remained in the United States long after the expiration of her B-2 visa and corresponding status."). For these reasons, the undersigned finds that the 13-year period vested Petitioner with a liberty interest protected by the Fifth Amendment due process clause.

Having determined that Petitioner had a protected liberty interest, the question remains what process is due based on that interest. The Court applies the three factors announced in Mathews, 424 U.S. 319, to answer this question.

**Private Interest:** The first factor unquestionably tilts in Petitioner's favor because he has a clear interest in remaining free from detention. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]" Foucha v. Louisiana, 504 U.S. 71, 80 (1992). Petitioner was at liberty for over 13 years before being detained in this case. The duration of his freedom from detention underscores his liberty interest. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (finding in the past two years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."). Here, "the Government ha[s] made a decision not to detain" a non-citizen "in the first place" after the filing of an application for immigration benefits, "this decision vest[s] the same liberty interest as a prior detention and release." Gagik T., 2026 WL 1837413, at *3 (quoting Kharitonova, 2026 WL 531441, at *2); see also id. (finding that this "course of conduct" by the government "reflect[s] a sustained decision to permit Petitioner's liberty").

////

**Risk of Erroneous Deprivation**: The risk of erroneous deprivation also weighs in Petitioner's favor. "The risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker." Oliveira Tinoco, 2026 WL 2949219, at *6 (quoting Orozco-Salazar v. Warden Desert View Facility, Adelanto Ice Processing Center, et al., No. 5:26-CV-04555-KES, 2026 WL 2497334, at *4 (C.D. Cal. Aug. 25, 2026)); see also Gagik T. v. Chestnut, No. 1:26-CV-04337-MWJS, 2026 WL 1837413, at *4.

In the short opposition, Respondent emphasizes that Petitioner has yet to request a hearing under § 1226(a) and argues that this available procedure provides all the process that he is due.[2] ECF No. 5 at 1. But a pre-deprivation hearings and post-deprivation § 1226(a) hearings "present starkly different situations":

> A pre-deprivation hearing enables a noncitizen to retain their full liberty prior to the hearing, and moreover, it is precisely that liberty that provides the noncitizen full access to their resources and independence which may be crucial to preparing an adequate defense for the hearing. In contrast, a post-deprivation hearing given only upon the noncitizen's request . . . deprives the noncitizen of their liberty throughout three requisite procedural steps: the noncitizen becomes informed of their right to seek a hearing if not already so informed, the noncitizen requests a hearing, and a hearing is provided. Further, the circumstance of detention necessarily hinders the noncitizen's ability to adequately prepare to defend herself because she is physically separated from resources and entirely dependent on the mechanisms, protocols, and discretion of the government's detention facilities and operators.

Oliveira Tinoco, 2026 WL 2949219, at *6 (questioning "the adequacy of the post-deprivation process . . . in the face of a constitutional due process challenge," and finding second Mathews factor favored the petitioner). The undersigned agrees that a post-deprivation, § 1226(a) hearing is not an equivalent procedure and generally insufficient to safeguard Petitioner's substantial liberty interest here.

**Government interest:** Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are "minimal." See D. L.C. v. Wofford, No. 1:25-CV-01996-DC-JDP (HC), 2026 WL 25511, at *5 (E.D. Cal. Jan. 5, 2026) (citing Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Where removal is not imminent under a

---

[2] Respondent does not argue that Petitioner is required to exhaust administrative remedies. But if he had, administrative exhaustion should be waived in this case pursuant to Laing v. Ashcroft, 370 F.3d 994, 1000-01 (9th Cir. 2004), based on the irreparable injury that would result to Petitioner in the absence of review of the constitutional claims raised in his § 2241 petition.

final order of removal, as in this case, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017).

For all these reasons, the undersigned finds that Petitioner is entitled to relief under the Mathews factors. While a "non-pretextual change in circumstance" can warrant post-deprivation relief, see Hidalgo v. Warden of the California City Det. Facility, No. 1:26-CV-3511-DC-JDP, 2026 WL 1707795, at *1 (E.D. Cal. June 12, 2026), the record here is clear that prosecutors dropped the charges before Petitioner came into ICE custody. Petitioner has no other arrest or encounter with law enforcement in his record. See ECF No. 5-1. "Respondent[] provide[s] no reason why a pre-deprivation hearing could not be held for Petitioner, and point to no evidence of urgent concerns warranting h[is] detention without a hearing[.]" Oliveira Tinoco, 2026 WL 2949219, at *6. Accordingly, the undersigned finds that the appropriate relief in this case is immediate release from immigration detention based on Respondent's failure to provide Petitioner with any pre-deprivation hearing prior to detaining him.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Petitioner's motion to proceed in forma pauperis (ECF No. 7) be GRANTED.

Additionally, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus be GRANTED as to his due process challenge to his arrest without pre-deprivation notice;[3]

2. Respondent be ordered to immediately release Petitioner Shardon Milton Palmer (A# 214-963-954).

3. At the time of release, Respondents be required to return all of Petitioner's documents and possessions.

4. If the government seeks to re-detain Petitioner, it must provide no less than seven

[3] In the interests of judicial economy, Petitioner's challenge to his allegedly warrantless arrest is not addressed herein.

(7) days notice to Petitioner and provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his re-detention is warranted.

5. The Clerk be directed to serve the California City Immigration Processing Center with any order of release issued in this case.

6. The final order entered in this case not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

7. The Clerk of Court be directed to enter judgment for Petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 9, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE